HEIRS OF MARIO L. MERCADO PARRA, Plaintiffs and Appellees, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. R-64-139.    Decided September 28, 1965.

692

*J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for appellant. *Charles R. Cuprill,* and *Pedro M. Porrata* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Mario Luis Mercado-Parra died intestate on September 27, 1952. His only heirs are his parents, Mario Mercado-Riera and María Luisa Parra-Capó. On January 3, 1957,

while the Estate of Mario Luis Mercado-Parra was under administration and without it having been divided nor the corresponding inheritance tax liquidated or paid, a private contract was executed between the succession, represented by its judicial administrator, and Eufemia Eileen Mercado-Parra and Adriana Luisa Mercado-Parra and their respective husbands, Murray O'Hanlon and Patrick J. Wilson. By that contract, which was also subscribed by the heirs, the succession assigned to each one of the spouses O'Hanlon-Mercado and Wilson-Mercado $33\frac{1}{3}$ per cent of the leasehold rights which the predecessor, Mario Luis Mercado-Parra, had in Alomar, Porvenir, Macona, Guarema, Florida and Rivera properties and their utilities. The acquirers agreed to operate—as a joint venture constituted with the Succession of Mario Luis Mercado-Parra—the aforementioned properties. The succession also contributed with certain interests it had in the Florida and Rivera properties, as well as the remainder of its leasehold rights and the agricultural equipment existing on those properties.

From and after 1957 the succession reported its income for each succeeding tax year, including that year, on two returns, one under the name of "Heirs of Mario L. Mercado-Parra" and the other, as a joint venture, under the name of "Succession of Mario L. Mercado (Agricultural Enterprise)."

The Secretary of the Treasury did not recognize the joint venture so constituted. Consequently, he attributed to the heirs of Mario Luis Mercado-Parra, as an individual taxpayer, the income from the agricultural phase for the years 1957, 1958, and 1959 which were reported on independent and separate returns by the Succession of Mario L. Mercado (Agricultural Enterprise). The tax deficiency amounted to $90,912.69.

Feeling aggrieved by that determination, the taxpayer appealed to the Superior Court of Puerto Rico, San Juan Part, and that court rendered judgment sustaining the com-

plaint and ordering that the deficiencies notified be set aside. We acceded to review this judgment.

It is alleged in the first assignment that the trial court erroneously held that the leasehold rights do not form part of the taxable hereditary estate.

The Inheritance and Gift Tax Act requires that every administrator, ancillary administrator, executor, trustee, agent, or person authorized to administer the estate of a decedent shall transmit to the Secretary of the Treasury a notification of the death of the decedent, stating, among others, the amount, valuation, description and location of the estate of the decedent. 13 L.P.R.A. § 893. The valuation of these properties is precisely what is taken into consideration for levying the inheritance tax. We must therefore determine what kind of properties are to be included in the afore-mentioned notification.

Section 882 of Title 13 L.P.R.A. contains a number of definitions of words employed in the Inheritance and Gift Tax Act. Among those definitions is that of the word "property," which reads as follows:

"In the present Act the word . . . 'property' shall be construed to include both 'real' and 'personal estate,' *and any form of interest therein,* including life incomes and annuities of any form or kind, as well as usufruct, nude property, or any kind of rights and actions." (Italics ours.)

■■ In the light of this definition it may be seen that the word "property" includes not only the material objects which a person may possess but also any right to which one may be entitled or any action which may be asserted. Since a lease contract is the right to use or enjoy a thing, the same should be considered as "property" forming part of the hereditary estate whenever such lease has a real market value. *P.R. Drydock* v. *Secretary of the Treasury,* 85 P.R.R. 707 (1962) ; *Berrocal* v. *District Court,* 76 P.R.R. 35 (1954).

■ Under a lease contract the lessee is entitled to the real value of the use and occupancy of the leased property for the unexpired term of the contract. In condemnation cases we have recognized the right of the lessee of the condemned property to compensation based on the market value of his lease contract, and in fixing the compensation we have used as test the value of the use and occupancy of the leased property for the remaining period of the contract, less the agreed lease rental. *People* v. *McCormick, etc.,* 78 P.R.R. 895 (1956); *Commonwealth* v. *Baldrich,* 79 P.R.R. 640 (1956). Where there are unexpired leases as part of the hereditary estate, the heirs receive the right to the use and enjoyment of the property leased by their predecessor for the remaining period of the lease contract, and such right is clearly "property" for the purposes of the Inheritance and Gift Tax Act—13 L.P.R.A. § 882—and therefore, contrary to the erroneous holding of the trial court, it is subject to taxation.

In the second and third assignments it is alleged that the trial court erred in holding that under the private contract of January 3, 1957, the heirs did not alienate or encumber property belonging to the succession of Mario Luis Mercado-Parra, and also that it erred in holding that the taxpayer did not violate the Inheritance and Gift Tax Act, since no distribution, alienation or mortgage of properties of the decedent prohibited by § 12 of the Act was involved.

■■ The lessee may convey by sublease or assignment the enjoyment or use of the thing leased. An assignment of a lease agreement is the conveyance by the lessee to a third person of his rights or legal position as a lessee. "In an assignment the lessee conveys his right unqualifiedly, his personality disappears, there remaining in the legal relationship only two persons, the lessor and the assignee who becomes the lessee." 10 Manresa, *Código Civil* 510 (rev. 5th ed. 1950).

The transfer made in this case between the succession and third persons cannot be considered, as contended by the appellee, as a mere contribution of property to an enterprise for its operation. Juridically there was a dispossession of property by the succession in favor of the Mercado-Parra sisters.

Actually the Secretary of the Treasury did not reject the existence of the joint venture for tax purposes on the grounds that it was a family agreement lacking reality, either because some of its members did not contribute or because, as a matter of fact, did not render vital services to the venture, or for any of the many other similar reasons by which joint ventures, created for the sole purpose of obtaining advantages in the tax liability devolving upon the individual income of the presumptive partners, have been rejected. See 6 Mertens, Law of Federal Income Taxation 125 *et seq.*, § 35.09. The Secretary of the Treasury instead refused to recognize the joint venture in this case because (a) the judicial administrator violated § 10 of the Inheritance and Gift Tax Act by assigning property of the inheritance without first paying the corresponding tax required by the Act, and (b) in the contract between the judicial administrator of the succession of Mario Luis Mercado-Parra and the assignees compliance was not had with the provisions of the Code of Civil Procedure prescribing the procedure for the administration, disposition, etc., of the properties of the decedent.

It is true, as contended by the appellees, that in *Quiñones Quiñones* v. *Quiñones Irizarry*, 91 P.R.R. 217 (1964), we said that the Inheritance and Gift Tax Act does not prohibit the heirs from disposing of the hereditary property before paying the corresponding taxes and that such prohibition is rather aimed at the courts, the notaries and the registrars of property, although naturally, and notwithstanding what we said in that case, the purpose of the Act is

that no disposition of hereditary property be made without previous payment of the inheritance and gift tax. *Cf. Zalduondo* v. *Treasurer*, 47 P.R.R. 343 (1934). It is also true that the right of the heir to the inheritance arises upon the death of his predecessor, and from that moment he may alienate his rights and actions therein, according to our holding, among other cases, in *Torres* v. *Registrar*, 75 P.R.R. 121 (1953). However, the inherited property assigned in this case was a determinate and specific property of an estate under judicial administration, and this assignment was made by the judicial administrator and the heirs without court authorization, notwithstanding such property was in *custodia legis. Aponte & Sobrino* v. *Heirs of Pérez*, 48 P.R.R. 437 (1935); *Mercado* v. *District Court*, 62 P.R.R. 350 (1943). The action of the judicial administrator in assigning jointly with the heirs the lease rights belonging to the hereditary estate violated the provisions of § 10 of the Inheritance and Gift Tax Act, which provides that "no administrator, executor, trustee or other person administering any estate, shall pay or *deliver* any specific legacy or property subject to said tax, to any person until he has collected the proper tax." (Italics ours.) On the other hand, the Code of Civil Procedure prescribes the procedure to be followed in the sale and disposition of hereditary property under judicial administration. Sections 571, 579, 576 and 578 of that Code (32 L.P.R.A. §§ 2431, 2439, 2436 and 2438 respectively). That procedure has been established in the interest of the heirs, creditors and legatees. It appears from the record that there are creditors of the succession of Mario Luis Mercado-Parra for considerable sums of money and that the Commonwealth is one of those creditors. These creditors did not give their consent to the heirs of Mario Luis Mercado-Parra to assign properties of the inheritance to third persons and with which it was sought to create a tax entity different from the said succession. Under such circumstances, the Secretary

of the Treasury was not bound to recognize, for the purposes of the Income Tax Act, the entity so created under the name of "Succession of Mario L. Mercado (Agricultural Enterprise)." Consequently, the trial court erred in setting aside the tax deficiencies object of this litigation.

The judgment object of this appeal will be reversed and another rendered instead dismissing the complaint and upholding the validity of the deficiencies notified to the "Heirs of Mario L. Mercado-Parra."

Mr. Chief Justice Negrón Fernández and Mr. Justice Belaval did not participate.